D. E. Boyer Co. v. Commissioner. D. E. Boyer, an individual, doing business as D. E. Boyer v. Commissioner.
D. E. Boyer Co. v. Commissioner
Docket Nos. P.T. 381, 382.
United States Tax Court
1943 Tax Ct. Memo LEXIS 423; 2 T.C.M. (CCH) 84; T.C.M. (RIA) 43105; March 2, 1943
*423 Gordon D. Kinder, Esq., for the petitioners. Jane M. Pierce, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: These proceedings involve the disallowance by the Commissioner of claims for refund of processing taxes on the manufacture of cigars filed by petitioners D. E. Boyer Co., and D. E. Boyer, individually, in the following amounts and for the following periods: Docket
No.
Petitioner
Amount
Period
4/ 1/35
P.T. 381
D. E. Boyer Co.
$ 252095
to
5/31/35
P.T. 382
D. E. Boyer, an
individual, doing
business as D.
10/ 1/33
E. Boyer
1,464.10
to
3/31/35
A claim for refund of the sum of the above stated amounts, $1,717.05, was filed in the name of D. E. Boyer Co. on July 1, 1937. Thereafter, on November 24, 1939, separate claims in the amounts shown above were filed by petitioners. The claims were disallowed by the Commissioner and notices thereof were sent to the petitioners on March 7, 1941. From these notices petitioners duly filed their petitions with the United States Processing Tax Board of Review. The question for our determination is whether, or to what extent, the petitioners have borne the burden of the processing *424 taxes which they paid. [The Facts] During the periods involved in these proceedings petitioners operated a cigar manufacturing business at Belmont, Ohio. The business was managed by George F. Boyer, husband of Petitioner D. E. Boyer. From October 1, 1933, to March 31, 1935, inclusive, the business was conducted as a sole proprietorship in the name of D. E. Boyer. During that period processing taxes on the processing of tobacco amounting to $1,455.15 (the amount stated in the claim was $1,464.10) were paid by petitioner D. E. Boyer. From April 1 to May 31, 1935, inclusive, the business was conducted as a partnership in the name of D. E. Boyer Co. During that period processing taxes of $252.95 were paid by petitioner D. E. Boyer Co. Prior to 1934 petitioner D. E. Boyer Co. manufactured a large cigar to retail at two for five cents. On January 1, 1934, the manufacture of the large cigar was abandoned and petitioner began manufacturing a much smaller cigar of the Cheroot type to retail at three for five cents. The large cigar required about 18 or 19 pounds of tobacco per thousand and the small cigar required about seven or eight pounds per thousand. The small cigar required a *425 finer and more uniform filler. In March, 1934, the length of the small cigar was increased from 4 to 4 1/2 inches and there was a corresponding increase in the tobacco content of about one-half pound or one pound per thousand. The larger cigar was sold wholesale at $16 to $16.50 per thousand and the smaller one at about $13.50 per thousand, less a 12 per cent trade discount. Petitioners did not collect or demand from their customers any part of the processing taxes as such which they paid for the tax periods in question. [Opinion] Most of the above stated facts were testified to by George F. Boyer. Petitioners were unable to furnish, for comparative purposes, the records of the cost of materials and labor for either of the tax periods or for any prior or subsequent periods. Petitioners' witnesses testified that all of such records were destroyed by a successor occupant of petitioners' office building sometime after 1938. We are unable from the evidence of record to make any comparison of the cost of production or the profits per unit before, after or during the tax periods to determine to what extent, if any, the processing taxes which petitioners admittedly paid were absorbed *426 by them and not passed on to their customers. Admitting this failure of evidence petitioners state in their brief as follows: This case presents the question whether a concern, which by reason of its limited facilities for bookkeeping, was never able to keep its records in the shape more prosperous manufacturers keep theirs, and which has lost most of the records it had, through no fault of its own, is to be held in establishing that it is entitled to a refund of taxes paid, to the high degree of proof required of the more fortunate manufacturer. In other words, are the petitioners, who by all the rules of fair play are entitled to a refund of the tax paid, to be denied the refund when it is inherently impossible for them to produce records, and where the facts, as disclosed by the evidence, afford no basis for any determination as to the shifting of the burden of the tax from the petitioners to others? While in the circumstances we would feel disposed to regard petitioners' failure of proof with all possible leniency, yet we can not make a determination which the evidence of record does not substantially support. The burden of proving that the Commissioner erred in rejecting the *427 claims for refund of the processing taxes which they seek to recover rests by statute (section 902 of the Revenue Act of 1936) upon the petitioners. In the absence of such proof we have no alternative but to sustain the Commissioner's disallowance of the claims. See ; Tennessee; ; . Decision will be entered for the respondent